UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

IAN GOOLSBY,

                Plaintiff,

                -v-

Z. CICCONI-CROZIER, PRIMARY
CARE PHYSICIAN (Jane Doe #1),
INTAKE NURSE #2 (Jane Doe #2),
PAUL CHAPPIUS, JR.,

                Defendants.

_____

**DECISION AND ORDER**
13-CV-822-A

## INTRODUCTION

Plaintiff Ian Goolsby, a former inmate of the Elmira and Chateaugay Correctional Facilities (hereinafter, "Elmira" and "Chateaugay") commenced this action pursuant to 42 U.S.C. § 1983 while he was incarcerated at the Franklin Correctional Facility, and has filed a motion to proceed *in forma pauperis.* His complaint seeks to recover damages stemming from the defendants' alleged failure to provide him with a medication to treat his narcolepsy during his incarceration at Elmira and Chateaugay in April and May, 2013. Plaintiff's application to proceed as a poor person will be granted and, for the reasons discussed below, the complaint will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

## **STANDARD OF REVIEW**

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a), plaintiff is granted permission to proceed *in forma pauperis*. Section 1915(e)(2)(B) of 28 U.S.C. provides that the Court shall dismiss a case in which *in forma pauperis* status has been granted if, at any time, the Court determines that the action (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.  Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).

In evaluating the complaint, the Court must accept as true all of the factual allegations and must draw all inferences in plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999).  Moreover, "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations." *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004); *and see Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). "The policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights

because of their lack of legal training.'" *Abbas*, 480 F.3d at 639 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983)).

Nevertheless, even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks and citation omitted).

Upon review of the complaint, plaintiff's request to proceed as a poor person is granted, but the Court finds that plaintiff's claims must be dismissed pursuant to U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.

## DISCUSSION

Plaintiff suffers from narcolepsy, a chronic sleep disorder which can cause sudden daytime attacks of drowsiness and sleep. The First Claim of his complaint alleges that upon his arrival at Elmira on April 8, 2013, he informed Intake Nurse Administrator Cicconi-Crozier that he had been prescribed Nuvigil for his condition, whereupon she told him that he would not be receiving that medication, "so forget it." The Second Claim of the complaint alleges that on April 9, 2013, plaintiff saw Jane Doe #1 (Primary Care Physician), explained his

experience with defendant Cicconi-Crozier, brought with him a doctor's note describing his diagnosis, and explaining that he had initiated treatment, as well as a document indicating the tests that had been performed on him.  Plaintiff alleges that defendant Jane Doe #1 responded that "DOCS does not issue narcotics."

Plaintiff's Third Claim alleges that in response to the grievance he had filed after having been denied Nuvigil, defendant Superintendent Chappius never investigated any of his claims, but simply concurred with Cicconi-Crozier and denied his grievance.  The decision, dated May 20, 2013, a copy of which is attached to the complaint,[1] referred to Cicconi-Crozier's investigation as revealing that there was no record from the county jail at which plaintiff was located prior to his arrival at Elmira substantiating plaintiff's allegations with respect to his having been prescribed the drug, and that the requested medication was "non-formulary" which "requires central office review and approval before prescription/treatment," The Superintendent's decision concluded by advising plaintiff to "follow up at his permanent facility."  Plaintiff claims that Chappius' failure to sufficiently investigate plaintiff's claims and to then provide treatment for the diagnosed

---

[1] Also attached to the complaint is the I G.R.C.'s response to plaintiff's grievance, dated April 26, 2013. The response to plaintiff's grievance quoted Cicconi-Crozier's investigative report stating that plaintiff was not on Novigil when at the county jail before his transfer to Elmira; that Nuvigil was "non-formulary and must be reviewed and requested through Albany"; that she did not have any old records to confirm plaintiff's past usage of the medication; and that because plaintiff was "in reception status," he had been instructed to follow up at his permanent facility. After summarizing Cicconi-Crozier's investigative report, the response stated that the investigation into the records "reveals that the prisoner was never prescribed NOVIGIL [sic] at the county jail he was at."  In addition, the response stated that although plaintiff claimed he had documentation from outside doctors, there was nothing "other than his self-serving statements" to show that he had ever presented his documentation to facility medical staff.  The response concluded that "we are left with no choice other than to deny at this time, though it should be noted that resubmission is possible with the documented submission of valid claimed paperwork."

condition demonstrated "deliberate indifference" to his condition in violation of the Eight Amendment.

Plaintiff's Fourth Claim alleges that upon his arrival at Chateaugay on April 26, 2013, he informed defendant Intake Nurse #2 of his condition and the medication necessary to treat it, etc.  While the Intake Nurse told plaintiff that she would look into the issue, her failure to get back to him led him to write to the facility's nurse administrator; he was subsequently called to the infirmary by the Intake Nurse to sign a release, but after a further delay, he was again called to the infirmary, on May 23, 2013, but the nurse refused to see him.  Plaintiff alleges that the Intake Nurse's actions constituted deliberate indifference to his medical condition, and violated the Eighth Amendment.

Plaintiff a grievance the same date (May 23, 2013), and he states that the grievance was "accepted in part" but that on appeal to the Superintendent, it was "inadequately resolved" though he does not explain further.  The Chateaugay Superintendent's decision, a copy of which is also attached to the complaint, states, in part, that after plaintiff "requested information regarding a specific medication", medical records "were requested and after being reviewed by the facility M.D., the grievant's medical level was changed.  The grievant was transferred to an appropriate facility on 6/10/13 where his medical needs could be addressed."

The Eighth Amendment "imposes a duty upon prison officials to ensure that inmates receive adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 844, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). To establish a constitutional claim based on the quality of medical care provided by a defendant, a plaintiff who is in custody must demonstrate "deliberate indifference to [his] serious medical needs." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)) (alteration in original).

This two part test embodies both an objective and a subjective component. First, as an objective matter, "the alleged deprivation of adequate medical care must be 'sufficiently serious.'" *Salahuddin*, 467 F.3d at 279 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). "Only deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* (quoting *Wilson*, 501 U.S. at 298) (internal quotation marks omitted). This objective inquiry itself may be split into two parts. First, the court asks "whether the prisoner was actually deprived of adequate medical care." If so, the court next considers "whether the inadequacy in medical care is sufficiently serious." *Id*. at 279-80. "This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id*. at 280. "For example, if the prisoner is receiving on-going

6

treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Id.* (quoting *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003)) (internal quotation marks and brackets omitted). "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Smith*, 316 F.3d at 187.

The second, subjective component of an Eighth Amendment claim requires us to ask whether the failure to render proper care resulted from "a sufficiently culpable state of mind." *Id.* (citing *Wilson*, 501 U.S. at 300). This state of mind must reflect "deliberate indifference to inmate health, . . . a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Id*. (citing *Farmer*, 511 U.S. at 839-40). Disagreement with a course of treatment chosen by a medical provider does not suffice to demonstrate such indifference. *See, e.g.*, *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir. 1998); *Sonds v. St. Barnabas Hosp. Corr. Health Serv.*, 151 F. Supp.2d 303, 312 (S.D.N.Y. 2001). Indeed, even negligence tantamount to medical malpractice does not amount to an Eighth Amendment violation. *Estelle*, 429 U.S. at 105-06; *Chance*, 143 F.3d at 703. To be held in violation or the Eighth Amendment, the charged official must

"act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin*, 467 F.3d at 280 (citing *Farmer*, 511 U.S. at 836-37).

A delay in medical treatment does not suffice *per se* to show deliberate indifference:

> Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, this Court has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a "life-threatening and fast-degenerating" condition for three days; or delayed major surgery for over two years. No such circumstances are present here. At no point was [plaintiff's] condition "fast-degenerating" or "life-threatening," and there is no indication that [defendant] delayed treatment in order to punish] him. Moreover, any delay in treatment in this case does not rise to the egregious level identified in Hathaway. That [plaintiff] feels something more should have been done to treat his injuries is not a sufficient basis for a deliberate indifference claim.

*Demata v. N.Y.S. Corr. Dep't of Health Servs.*, No. 99-0066, 198 F. 3d 233 (table), 1999 U.S. App. LEXIS 22955, at *5 (2d Cir. Sept. 17, 1999) (citations omitted) (Summary judgment for defendants where plaintiff complained of knee injury in February 1994 and surgery not performed until March 1997.).

Construing the complaint liberally, plaintiff alleges that he was denied the proper medication for his narcolepsy at Elmira from his arrival at the facility on April 8, 2013 until his transfer from Elmira to Chateuagay on April 26, 2013.  He alleges that he was likewise denied his medication at Chateaugay upon his arrival there on April 26, 2013, and after the denial persisted for a few weeks, he filed a

grievance (on May 23, 2013) which he states was "accepted in part." As noted *supra*, the Chateaugay Superintendent's decision indicated that in response to the grievance, plaintiff's medical records were changed andd he was transferred on June 10, 2013 to a facility where his medical needs could be addressed.

     Even upon the most liberal construction of the complaint, plaintiff's allegations fail to satisfy the objective component of a deliberate indifference claim because he does not allege that any actual harm resulted, or was likely to result, from the alleged denial, or delay in the receipt of, the medication, *i.e.*, any health or safety consequences such as pain or an accident, or a worsening of his underlying condition, or that the denial created any particular risk of harm. *See, e.g., Brickhouse v. City of New York*, 2010 U.S. Dist. LEXIS 92394, at *9 (S.D.N.Y. Aug. 16, 2010) (claim that inmate's asthma medication was taken from him did not satisfy the objective component of a deliberate indifference claim because he did not allege any resulting asthma symptomology) (citation omitted); *Greene v. Furman*, 610 F. Supp. 2d 234, 237 (W.D.N.Y. 2009) ("Plaintiff also fails to state an Eighth Amendment claim. There is no allegation that any delay in plaintiff's mental health treatment occasioned by defendant's response to plaintiff's actions . . . caused any actual harm to plaintiff, or that it put his health at risk."). A strikingly similar deliberate indifference claim was dismissed by the Northern District of Illinois (Hon. Marvin E. Aspen) in *Kerney v. Raba*, 1990 U.S. Dist. 3174 (N.D. Ill. March 20, 1990). In that case, an inmate suffering from

narcolepsy alleged that he did not receive the appropriate medication for his condition (ritalin) for approximately three months, though he had informed the jail health services of his condition upon entering the facility, and that he received it only occasionally after that.  In dismissing plaintiff's deliberate indifference claim, the Court emphasized the "lack of any allegation of injury from the delay in receipt and haphazard distribution" of his medication.  1990 U.S. Dist. LEXIS 3174, at *5.  The Court added

> Kerney suffers from narcolepsy. . . . Kerney suffers narcoleptic seizures several times a week with each seizure lasting about fifteen minutes. Irresistible fits of sleep could pose a danger in certain circumstances, for instance while one is driving. But the potential for harm is greatly reduced for one who, like Kerney, spends his day in confinement under close supervision. Thus, under the circumstances of this case, the possibility of grave injury from a delay in receipt of medication is somewhat remote. Indeed, other than suffering sleep attacks, Kerney alleges no harm from the problems he encountered in getting his medication. Thus, while Kerney may not have received prompt and efficient attention to his medical needs, the complaint does not allege a deliberate indifference to serious medical needs.

1990 US. Ist. LEXIS 3174, at *6-7.  Plaintiff in the instant matter alleges no harm or injury suffered as a result of the apparent two month delay in his obtaining the appropriate medication for his narcolepsy

Plaintiff's allegations likewise fail to satisfy the subjective prong for establishing an Eighth Amendment violation.  Construed liberally, his allegations, supplemented by his references to the grievance-related documents attached to

the complaint, indicate that the defendants were unwilling to authorize Nuvigil, a narcotic , for plaintiff until being able to confirm that he had been prescribed the medication, and that it was the appropriate drug for his condition.  The decisions on his grievances at both Elmira and Chateaugay do not suggest that the defendants' actions, in denying plaintiff the requested medication until approved through regular channels, "were taken out of any sadistic or otherwise impermissible motive", *Greene v. Furman*, 610 F. Supp. 2d 234, 237 (W.D.N.Y. 2009).  Indeed, as plaintiff admits, the grievance he filed at Chateaugay was "accepted in part" and the decision on that grievance, as noted above, stated that after the appropriate medical records were reviewed, plaintiff's medical level was changed and he was transferred to "an approrpriate facility on 6/10/2013 where his medical needs could be addressed."  There is nothing in the complaint to suggest that the defendants' refusal to authorize the requested drug, at least before confirming that it was appropriate for plaintiff, was done while they were actually aware, but disregarded, a substantial risk that serious harm to plaintiff would result.  At most, plaintiff's allegations evidence disagreement between plaintiff and facility officials concerning the proper treatment of his condition, and such disagreement does not give rise to an Eighth Amendment violation.  *See Chance v. Armstrong*, 143 F.3d at 703; *Rodriguez v. Ames*, 224 F.Supp.2d 555, 561 (W.D.N.Y. 2002). ("Although a delay in medical care can demonstrate deliberate indifference to a prisoner's medical needs, a prisoner's Eighth

Amendment rights are violated only where the delay reflects deliberate indifference to a serious risk of health or safety, to a life-threatening or fast-degenerating condition or to some other condition of extreme pain that might be alleviated through reasonably prompt treatment") (internal quotation marks omitted).

## **CONCLUSION**

Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to the filing fee. Accordingly, plaintiff's request to proceed *in forma pauperis* is granted and, for the reasons discussed above, the complaint is dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A. Plaintiff is forewarned that his right to pursue further relief in federal court at public expense will be greatly curtailed if he has three actions or appeals dismissed under the provisions of 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. *See* 28 U.S.C. § 1915(g).

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 Led.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

**ORDER**

IT HEREBY IS ORDERED, that plaintiff's request to proceed *in forma pauperis* is granted;

FURTHER, that the complaint is dismissed with prejudice;

FURTHER, that plaintiff's motion to appoint counsel is denied as moot;

FURTHER, that leave to appeal to the Court of Appeals as a poor person is denied.

**IT IS SO ORDERED.**

____*Richard J. Arcara*_____
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:   March 27, 2014